The next case on the calendar is Disability Rights New York v. New York State et al. We have Ms. Tomlinson on Zoom. Can you hear me okay, Ms. Tomlinson? I can hear you, yes. I apologize, Brownie, that I have to read in the captioning. Okay, so I see you reserve one minute for rebuttal, and you can begin whenever you're ready. Correct. May it please the Court, my name is Brandy Tomlinson, and I represent Disability Rights New York. The NNY is fighting for the critical mission given to us by Congress to provide protection to individuals with disabilities in prison in the New York State DOC system. But two fundamental reasons that I will share today, adoption of these harmful preconditions regarding the production of records, as well as the irreparable harm standards that the District Court created, will render the NNY unable to timely investigate abuse and neglect investigations, as well as answer urgent calls for assistance from individuals with disabilities, as well as the caretakers that support them. Ms. Tomlinson, the issue before us now is the appeal from the preliminary injunction order, correct? Correct. Yeah, and the injunction you sought was to enjoin the defendants from denying the plaintiff access to the requested records. It seems to me you've gotten all those records for both individuals now. If that's correct, why isn't the appeal moot? So this appeal is not moot because the legal conclusion the District Court created regarding irreparable harm, that the NNY is not harmed when a service provider denies or withholds copies, will continue to evade review. And it is reasonably expected that without review of its legal conclusion, the facts will repeat itself. You have two other suits pending against DOCs, also before Judge Sutterby, I believe, in the NDNY. So I'm wondering, even if we were to agree with you that this were capable of repetition yet evading review, why would the analysis and interpretation of the statute that Judge Sutterby gave in this case recur? I think he first made it in DRNY1. And why wouldn't an appeal from one of those cases be an appropriate setting for us to examine those conclusions in a way that doesn't have this shadow of mootness behind it? Because after all, we have said that using the exemption from mootness for cases capable of repetition yet evading review is very circumscribed and narrow and really to be used in only exceptional cases. So wouldn't it come up in one of the other two litigations that you have pending? It could potentially come up in the other two cases. But the issue that we have is that DNNY cannot wait for it to come up in the other cases. The first case, we do not plan to file a preliminary injunction. The third case, we've already filed a preliminary injunction. We need this court to hear this issue now because this is the only point in time that we can do that. We can seek review of whether a DNNY is irreparably harmed when a service provider withholds copies of records. Without a finding now that DNNY is irreparably harmed when a service provider withholds copies of records, DNNY will be forced to wait years to enforce its assets while the case proceeds. Ms. Tomlinson, can I? But also future investigations and advocacy by DNNY on behalf of individuals with disabilities. We would not be able to seek a preliminary injunction when records are being withheld because instead we would have to wait until the case withdraws to seek review of the district court's interpretation of the P&A Act. Ms. Tomlinson, I'm not sure I understand how this could happen again. Under the New York P&A Records Act, it seems like that New York State has superseded DOC's requirement that you review the records on site. Under that act, that's to be provided, copies have to be provided free of charge within three business days of receipt of the written request. So we have these two individuals. It's moot because you've received the documents, and it seems like whatever their position is with respect to the federal statutes, that they are going to provide the relief that you're seeking under the New York State Act. So this can't happen again, or am I missing something? They've agreed they're going to comply with the act. On page 20 of their brief, they say they're going to comply with the New York State, the new Records Act provision. So they have not abandoned their legal position. The history of the cases established that we got to file our third case just last year for the same reason they would have copies. Regarding the state law, it's not at dispute in this case. So it has no impact on the federal law. But I also want to point out that the state doesn't have the right to supplant the federal law, only to supplement it. A records request will continue to cite federal law. And it's also important, I think, to note, too, that the state law is relatively new. It hasn't been interpreted, whereas the federal law has been around, the federal P&AS has been around for approximately 30 years. What relief could we order in this case? You know, the preliminary injunction, again, was to get documents. You've gotten the documents. What more could we do? So what we're looking for in this case is we're appealing the legal conclusion, more specifically the standard that the district court created for irreparable harm. Why isn't that asking for an advisory opinion? Why couldn't you address those issues? You've got summary judgment motions pending before the district court. Why couldn't these issues be addressed there? Because this is the only point in time that we can get review of the preliminary injunction. We do not have a preliminary injunction in the other cases pending right now. To give you a background of how- Why isn't this, in essence, a request for an advisory opinion on the law? It sounds like you're agreeing that there's no further relief that we could order other than clarifying the law. Or is that all you're looking for is a clarification of the law? That's what we're looking for, the clarification of the law. The only one who cannot live with the irreparable harm standard that the district court created is an outlier. No other district court, no other circuit court has ever- Let me ask a more general question then about how you interpret the law. If we were to agree with you that access does not just mean physical access, but some other kind of mechanism. The district court pointed out in his expressing his hope for settlement here that the docks has in its custody 48,000 convicted felons. And I didn't see any suggestion of a limitation on, I mean, your right to demand records related to each one of those people, all on one day, potentially. I certainly agree and appreciate the breadth of the mission of DRNY and its federal obligations. I also have sympathy for docks in that neither of you has an endless budget. You both have very important responsibilities. And I'm not sure that I heard in your, or read in your papers, any sense of a process or a limitation on the kinds of demands you can make on docks for potentially millions and millions of pages of documents. And that's why I also have been, like the district court, hoping that you all are engaged in the settlement discussions. We'll work out a viable way of each fulfilling your mandates. But it may take budgetary changes that aren't available. Could you address that general concern that I have, please? Do you have a limitation? Do you have any sense of which you take account of the equities that go in docks' favor as well as in your own to reflect the physical difficulties and costs associated with potentially unlimited demands? So Congress didn't intend for the P&A system to encounter these kind of limitations or barriers. Congress wanted P&A to be able to obtain copies of records as easy and as quickly as they could. And I would argue that it's not a burden on docks to follow the law. They agree to house incarcerated individuals with disabilities. It's not a burden, but to follow the law. So you could potentially make demands with regard to 10,000 individuals in one day and expect a substantive response within three days, is that right? Correct, but there is a provision in the P&A regulations that allow a service provider, so hypothetically, let's say we did make 10,000 requests in a day. We never have, just to point that out, but hypothetically speaking, if we did, docks could say to us, there's a provision that allows the service provider to contact the owner in line if there's going to be a delay and say, hey, you've given us 10,000 requests, we need extra time. But that's set up to put the burden on docks. Docks needs to contact the P&A system in order to do that. Are there settlement discussions or mediations going on to try to work out a way of both satisfying your needs within the budgetary constraints you have? We attempted to reach settlement twice. In the first case, we were not able to reach it. In this instant case, docks refused to engage in settlement discussions with us because our view of the law is on opposing ends with their position for refusing to engage in settlement talks. So mediation was waived. So your interpretation of the statute of access means you provide a request for all paper documents or electronic documents with regard to individual acts, and the system needs to provide them all to you within three days. Correct. DRNY has to pay for those copies, but you say that... I mean, I thought there had been instances in which you declined to pay for the copies because you decided you only wanted a subset of them. So how is docks supposed to respond? There has not been an instance where we are declined to pay for copies. We're required to pay for copies by the P&A Act because the P&A Act specifically included language that if a service provider provides copies, they may charge a reasonable cost. And also, the P&A is not inclined to not pay for copies because we... What I'm saying is if there are 10,000 documents that are responsive and you decide that the budget really won't cover copies of 10,000 and really what you're interested in is incidents that happened only in the last year, that you would decline to accept copies of all of them and you require docks to segregate those copies or to do a search of some kind. Even if we want to change our mind, we would still have to pay for it because we requested they make the copies. So we would have to pay for them. Okay, thank you. All right, thank you very much, Ms. Tomlinson. You have your one minute for rebuttal and we'll hear from Mr. Brody. Thank you, Your Honor. May it please the Court, Frederick Brody for appellees. This appeal from the partial denial of a preliminary injunction... I mean, this is a case that just cries out for a settlement. The district court has actively encouraged settlement discussions and I understand that such discussions have occurred in DRNY 2 and DRNY 3. I'm not sure about DRNY 1, but they may well have occurred there too. Unfortunately, the two sides were unable to reach agreement. I understand that the judge proposed basically criteria by which questions could be made in the form that's acceptable to the court and I understand that those criteria were not acceptable to DRNY, but perhaps Ms. Tomlinson can speak about that. I was not involved in the settlement discussions, but I understand that they occurred. I don't think we're supposed to be privy to the substance of the discussions, but the point is this is one of these cases where, you know, it just seems to me it could be worked out, should be worked out. We also have mediation services here in the Second Circuit if the parties think that that might be helpful. We have professional mediators on staff. I will confer with Ms. Tomlinson after the argument and I will ask her about professional mediation. But meanwhile, we're here on an appeal from a preliminary injunction or PI. Plaintiff has admitted that it now has all the requested documents regarding incarcerated individuals A and B. So there's no further relief for this court to grant. The question is could this happen again? And I just want to make sure I understand the new amendment to the NYPA P&A Records Act. If they wanted more records tomorrow for individuals A and B and they put in a request for copies of those records, would the state provide them with it in three days, copies of those records under the State Act? Yes. We are complying with the State Act. So what happened in this case, in your view, could never happen again because of the requirement of the State Act? Am I stating that accurately? That's right. You know, and part of what went wrong in this case is someone- Let me interrupt before you move on, because I want to follow up on Judge Bianco's question. The State Act also, though, it creates the obligation to produce or enhances kind of-it spells out the obligation to produce, but it allows an excuse letter to be given three days later about why they weren't produced timely. And I can also imagine, you know, if requests are found to be burdensome or, you know, any number of reasons that docs might respond that we are unable to produce them at this time, they're voluminous, we're understaffed, there's been pandemic, some are electronics, some are paper. I mean, any number of reasons, just as there are in FOIA or in, you know, a discovery request, documents can't be produced on that quick a turnaround. So I would kind of expect the state to be looking to the explanation escape hatch for a while and then that just to be kind of dribbling out over time because, you know, it's difficult to respond to some of these requests. I, you know, I agree with everything Your Honor said. I would-subsequent to the briefing in this case, a declaration was put in on summary judgment in this case in the district court by a docs attorney, not from the Office of the Attorney General, but from docs who said docs is complying with the state act. Of course, compliance can include declining to produce the records and sending a letter saying we can't produce them this quickly. Isn't that right? That's right and that would presumably be negotiated by the parties in good faith so as to accommodate docs problems while getting the plaintiff the record it seeks. But so, yeah, I don't think that these issues are likely to repeat. Number one, because of the state law, which was not in effect when the underlying acts took place, but is in effect now. And number two, we don't expect another global pandemic like the COVID pandemic, which affected docs operations in 2020. But even without the pandemic, these requests can be challenging, and the district court has opined, whether it's dicta or not, that a search needn't be conducted and that what docs needs to do is get requests that are- or what DRNY needs to do is identify the document by individual and also by recipient and date with a level of specificity that it's hard to imagine one can comply with if one hasn't already seen the records. So it in effect requires DRNY to send people, get physical access to the documents, tab everything and go through the routine that we have been debating. So isn't that still kind of in the air, that that's what the district court is thinking is required? That is in the air in DRNY 1 and in DRNY 3. It's not in the air in this case because the specificity of the request was not at issue on either Individual A or Individual B. Individual A, docs made a mistake. It treated the records request as one made under FOIL, and this was during the thick of COVID. So, you know, not an excuse but an explanation. So someone says, okay, it's a FOIL request, they take 83 days to respond and then they redact some things. Ultimately that all gets worked out and they get the documents they wanted. Individual B, they won. Docs gave a blanket decline. They said, we're not producing documents because there's another investigation going on. DRNY got a PI and docs said, okay, we lose, we're complying. And they complied. So let me ask, these statutes have been in place for a long time and DRNY has been the system for a long time. There's no prior litigation? This has all been worked out in the past?  But I'm confused that there's so little construction of the statute and case law on the matter. Well, what happened is in 2018, DRNY accelerated the number of requests. And in the first eight months of 2018, they sent us 120 requests. So docs at the beginning of 2019 says, wait a minute. We're changing our policy. What we're going to do is give you, instead of doing all these copies for you, and your Honor was correct in the DRNY one record, there's an instance where there were 4,200, I don't know if it was one instance or several, but there was more than 4,200 pages of documents that were ordered and then DRNY said we don't want them. But after all of this, docs says in the beginning of 2019, we're changing our policy. We're going to give you on-site access. So we're going to open our doors, come on in, look at the documents, have the ones that you really need, and we'll copy them for you. Now, DRNY says, well, that's not really access. But it is. Well, but wait a minute. I mean, docs is the custodian of the documents. Docs organizes them. Docs maintains them. Docs knows where prisoners are. DRNY doesn't have that information. And to say, I mean, DRNY has a very important federal mandate to comply with. And I assume a limited budget to do so, even though it has the right to pay, uses budget to pay copying costs. So it is required to make inquiries and request documents. And I don't understand how docs can expect DRNY to identify documents with such specificity without getting physical access and going in. And that's an expenditure. The question to me seems like whose resources need more to be spent to comply with which mandate. Well, Your Honor, in terms of specificity, again, write that question down and save it for the appeal in DRNY1 or DRNY3, because that's where specificity is at issue. Here, the district judge, for whatever reason, put a discussion of specificity into the PI decision as dicta. It's not an issue. It's just- In all cases, though, we're looking at whether a physical access is access enough or whether the custodian of documents, which is docs, has an obligation to search potentially. Although the district court said you don't have to search. But to seek out and identify documents that would be responsive to a request that identified the disabled individual of concern and sought all medical records, for example. Well, docs does that. DRNY would say, I want to examine. This is under the on-site access policy. DRNY says, I want to examine documents in this room. I'm sorry, as to this incarcerated person. And then docs, they have what's called the DIN number, the number of the individual. They pull those records. They put them in a room. And they told DRNY, come in. Look at the records. Tell us which ones you want. And we'll copy them. That's the procedure that was followed with individual A. And unfortunately, it went by the boards because, as I said, of COVID and a mistake by someone in docs. But that was the general procedure under on-site access. Now, the ordinary meaning of access is the right or opportunity to use or look at something. We cite that dictionary definition in our brief. And DRNY doesn't dispute it. On-site access falls comfortably within that definition by saying, come on in. Doors open. Look at our documents. I just want to go back to the initial point. This is never going to come up again. This is never going to, because of the state law, this debate about whether federal law requires physical access or copying. In the state of New York, you're not going to be having that debate with DRNY anymore, right? That debate is over. That's right, Your Honor. First thing I said when I stood up after introducing myself was, case is moot. And the state law on this issue, Judge Carney noted that you can delay or deny under the new state provision. That's also true under the federal provision as well, right? Under 42 CFR section 5.43. If access is delayed or denied, the PA system shall be provided promptly with a written statement of reasons, right? Right, and that's why we weren't in default as to individual B. Right, so the New York law mirrors the federal law in that respect with regard to the reasons for delay or denial. But on this issue, this fundamental issue about what does access mean, New York is as broad as they could possibly want it, right? Right, it says provide them with copies. It says a written request is sufficient, as I understand the statute. And that's all that they want. That's all DNR NY wants, right? Right, so it's moot. Okay, all right, thank you. Thank you. Ms. Tomlinson, you have one minute in rebuttal. I'm sorry, can I ask one last question? I'm sorry. It says written request, but has DOCS taken a position about what the written request has to include in it in order to create an obligation to respond? Not to my knowledge. So if I wrote I want all records regarding individual A, you would need to produce all records with regard to individual A. I don't have to be any more specific than that. I think if there were a, and again, this is a hypothetical, it hasn't come up. But we are talking about what effect the act has. So I'm trying to understand what kind of written request the state would consider to be sufficient. We don't know. The answer is I don't know. I mean, I can say that we have a phone at DOCS. DRNY has a phone. They can talk to each other. And they can work out, you know, this is any document request. When you get one as counsel, you call up the other side and say, okay, what do you really need? Thank you. Thank you. You're welcome. Okay, Ms. Tomlinson, you have one minute in rebuttal. Thank you. So DRNY needs an interpretation of the irreparable harm standard because repetition will happen. They are not being consistent. They're telling you we're going to comply with state law. And I'm here to tell you they're not. Just two weeks ago, we had to file a motion for contempt because DOCS, when they turned over the records to us just a few weeks ago, turned over redacted records. And when we told them the PNAS do not permit you to redact records, they refused to budge. So they change their persistence all the time. This will happen again unless we get a decision regarding the irreparable harm standard. The second point that I wanted to make is that this is not a resource drain for DOCS. We submit requests for copies to all other state agencies. And DOCS is the only agency that refuses to provide us with copies without a physical inspection. Because they are relying on the district court's legal interpretation of the irreparable harm. All right. Thank you, Ms. Tomlinson. Thank you, Mr. Brody. We'll reserve decision. Have a good day. You too.